IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CANADA GOOSE INC., <br><br> Plaintiffs, <br><br> v. <br><br> THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," <br><br> Defendants. | Case No. 20-cv-00334 |

## COMPLAINT

Plaintiff Canada Goose Inc. ("Canada Goose" or "Plaintiff") hereby brings the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and alleges as follows:

### I. JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, ecommerce Internet stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases"). Specifically, Defendants have targeted sales to Illinois residents by setting up and operating ecommerce Internet stores that

---

[1] The ecommerce Internet store urls are listed on Schedule A hereto under the Online Marketplaces and Domain Names.

target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of Canada Goose's federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Canada Goose substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by Canada Goose to combat ecommerce Internet store operators who trade upon Canada Goose's reputation and goodwill by selling and/or offering for sale unauthorized and unlicensed products, including outerwear, using infringing and counterfeit versions of Canada Goose's federally registered trademarks (the "Counterfeit Canada Goose Products"). Defendants create ecommerce Internet stores operating under one or more Seller Aliases advertising, offering for sale and selling Counterfeit Canada Goose Products to unknowing consumers. Ecommerce Internet stores operating under the Seller Aliases share unique identifiers, establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. Canada Goose is forced to file this action to combat Defendants' counterfeiting of its registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Canada Goose Products over the Internet. Canada Goose has been and continues to be irreparably damaged through consumer confusion, dilution, and tarnishment of

its valuable trademarks as a result of Defendants' actions and seeks injunctive and monetary relief.

## III. THE PARTIES

**Plaintiff**

4. Founded in a small warehouse in Toronto, Canada, Canada Goose has grown to be an internationally recognized manufacturer, distributor and retailer of high quality, functional outerwear, including parkas, jackets, and coats and associated accessories for men, women and children, all of which prominently display its famous, internationally-recognized and federally-registered trademarks, including CANADA GOOSE (collectively, the "Canada Goose Products"). Canada Goose Products have become enormously popular and even iconic, driven by Canada Goose's arduous quality standards and innovative design. Among the purchasing public, genuine Canada Goose Products are instantly recognizable as such. In the United States and around the world, the Canada Goose brand has come to symbolize high quality, and Canada Goose Products are among the most recognizable outerwear in the world.

5. Canada Goose Products are distributed and sold to consumers through its flagship stores and retailers throughout the United States, including through authorized retailers in Illinois such as Bloomingdales, Nordstrom, Neiman Marcus, and Saks Fifth Avenue, and also through authorized online retailers in the United States including, but not limited to, Nordstrom, Backcountry.com, Shopbop, and East Dane. Additionally, Canada Goose has a flagship store in Chicago located at 800 North Michigan Avenue in the heart of Chicago's Magnificent Mile shopping district, a store in Boston located at 800 Boylston Street, a store in Soho New York located at SoHo 101 Wooster Street and finally a store in Short Hills New Jersey located at 1200 Morris Turnpike.

6. Canada Goose incorporates a variety of distinctive marks in the design of its various Canada Goose Products. As a result of its long-standing use, Canada Goose owns common law trademark rights in its CANADA GOOSE Trademarks. Canada Goose has also registered its trademarks with the United States Patent and Trademark Office. Canada Goose Products typically include at least one of Canada Goose's registered trademarks. Often several Canada Goose marks are displayed on a single product. Canada Goose uses its trademarks in connection with the marketing of its Canada Goose Products, including the following marks which are collectively referred to as the "CANADA GOOSE Trademarks."

| **REGISTRATION NUMBER** | **REGISTERED TRADEMARK** | **REGISTRATION DATE** | **INTERNATIONAL CLASSES** |
|---|---|---|---|
| 3,254,771 | *[Canada Goose Arctic Program circular logo]* | June 26, 2007 | For: Clothing, namely parkas, coats, jackets, pullovers, vests, sweaters, shirts, anoraks, and headwear, substantially made of goose down, where applicable in class 025. |
| 4,455,111 | CANADA GOOSE | December 24, 2013 | For: Outerwear, namely, coats, parkas, jackets, vests, pullovers, shirts, headwear, scarves, gloves and mittens, substantially made of goose down, where applicable in class 025. |
| 5,102,866 | *[jacket design drawing]* | December 20, 2016 | For: Clothing and outerwear, namely, coats and jackets in class 025. |

7. The CANADA GOOSE Trademarks have been used exclusively and continuously in the U.S. by Canada Goose, some since at least as early as 1994, and have never been abandoned. The above U.S. registrations for the CANADA GOOSE Trademarks are valid, subsisting, in full force and effect, and Registration No. 3,254,771 is incontestable pursuant to 15 U.S.C. § 1065. The registrations for the CANADA GOOSE Trademarks constitute *prima facie* evidence of their validity and of Canada Goose's exclusive right to use the CANADA GOOSE Trademarks pursuant to 15 U.S.C. § 1057(b). True and correct copies of the United States Registration Certificates for the above-listed CANADA GOOSE Trademarks are attached hereto as **Exhibit 1**.

8. The CANADA GOOSE Trademarks are exclusive to Canada Goose, and are displayed extensively on Canada Goose Products and in Canada Goose's marketing and promotional materials. Canada Goose Products have long been among the most popular outerwear in the world and have been extensively promoted and advertised at great expense. In fact, Canada Goose has expended millions of dollars annually in advertising, promoting and marketing featuring the CANADA GOOSE Trademarks. Canada Goose Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, functional use in extreme weather, and have been featured in luxury upscale magazines such as Travel and Leisure, Town & Country, Vogue, GQ, Esquire and Elle. In fact, Canada Goose is known as the unofficial outerwear of film crews, particularly those filming in extreme conditions, such as the crew that filmed the documentary capturing the journey of a champion musher along the 2013 Iditarod trail. Canada Goose Products have also been featured prominently on screen, including in the 2004 blockbuster "The Day After Tomorrow," "Mr. Popper's Penguins" in 2011, and "Man of Steel" in 2013, which has bolstered Canada Goose's popularity and relationship with

the film industry. Because of these and other factors, the Canada Goose name and the CANADA GOOSE Trademarks have become famous throughout the United States.

9. The CANADA GOOSE Trademarks are distinctive when applied to the Canada Goose Products, signifying to the purchaser that the products come from Canada Goose and are manufactured to Canada Goose's quality standards. Whether Canada Goose manufactures the products itself or licenses others to do so, Canada Goose has ensured that products bearing its trademarks are manufactured to the highest quality standards. The CANADA GOOSE Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As such, the goodwill associated with the CANADA GOOSE Trademarks is of incalculable and inestimable value to Canada Goose.

10. Since at least as early as 1999, Canada Goose has operated a website where it promotes Canada Goose Products at canadagoose.com. Canada Goose Products are available for online purchase through the official canadagoose.com website in Canada, the United States, the United Kingdom, France, Belgium, Luxembourg, Netherlands, Ireland, Austria, Germany, Italy, and Sweden, and also lists authorized U.S. retailers of Canada Goose Products. Online sales of Canada Goose Products represent a significant portion of Canada Goose's business. The canadagoose.com website features proprietary content, images and designs exclusive to Canada Goose.

11. Canada Goose has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the CANADA GOOSE Trademarks. As a result, products bearing the CANADA GOOSE Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-

quality products sourced from Canada Goose. Canada Goose is a multi-million-dollar operation, and Canada Goose Products have become among the most popular of their kind in the world.

**The Defendants**

12. Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the ecommerce Internet stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

13. On information and belief, Defendants, either individually or jointly, operate one or more ecommerce Internet stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for Canada Goose to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Canada Goose will take appropriate steps to amend the Complaint.

## IV. DEFENDANTS' UNLAWFUL CONDUCT

14. The success of the Canada Goose brand has resulted in its significant counterfeiting. Consequently, Canada Goose has a worldwide anti-counterfeiting program and regularly investigates suspicious websites and online marketplace listings identified in proactive Internet sweeps and reported by consumers. In recent years, Canada Goose has identified numerous fully interactive, ecommerce Internet stores on websites and online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate,

including the ecommerce Internet stores operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit Canada Goose Products to consumers in this Judicial District and throughout the United States. Ecommerce sales, including through ecommerce Internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

15. Marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, NW. J. INT'L L. & BUS. (forthcoming 2020), at 24. Further, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 25.

16. Defendants have targeted sales to Illinois residents by setting up and operating ecommerce Internet stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Canada Goose Products to residents of Illinois.

17. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the ecommerce Internet stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Ecommerce Internet stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal. Ecommerce Internet stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer. Canada Goose has not licensed or authorized Defendants to use any of the CANADA GOOSE Trademarks, and none of the Defendants are authorized retailers of genuine Canada Goose Products.

18. Many Defendants also deceive unknowing consumers by using the CANADA GOOSE Trademarks without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for Canada Goose Products. Other ecommerce Internet stores operating under Seller Aliases omit using CANADA GOOSE Trademarks in the item title to evade enforcement efforts while using strategic item titles and descriptions that will trigger their listings when consumers are searching for Canada Goose Products.

19. On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading and/or incomplete information to Internet based ecommerce platforms. On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent one from learning their true identities and the scope of their ecommerce operation.

20. On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit Canada Goose Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

21. Even though Defendants operate under multiple fictitious aliases, the ecommerce Internet stores operating under the Seller Aliases share unique identifiers, such as design elements, similarities of the price, description of the goods offered for sale, and of the Counterfeit Canada Goose Products themselves offered for sale. For example, ecommerce Internet stores operating under the Seller Aliases include notable common features, including use of the same registration patterns, shopping cart platforms, accepted payment methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images. Additionally, Counterfeit Canada Goose Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit Canada Goose Products were manufactured by and come from a common source and that Defendants are interrelated.

22. On information and belief, Defendants use templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.

23. On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as

10

sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

24. Counterfeiters such as Defendants typically operate multiple payment accounts so that they can continue operation in spite of Canada Goose's enforcement efforts. On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to Canada Goose. Indeed, analysis of PayPal transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based PayPal accounts to off-shore bank accounts outside the jurisdiction of this Court.

25. On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Canada Goose Products in the same transaction, occurrence, or series of transactions or occurrences. Defendants, without any authorization or license from Canada Goose, have jointly and severally, knowingly and willfully used and continue to use the CANADA GOOSE Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit Canada Goose Products into the United States and Illinois over the Internet.

26. Defendants' unauthorized use of the CANADA GOOSE Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Canada Goose Products, including the sale of Counterfeit Canada Goose Products into the United States, including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Canada Goose.

## COUNT I
## TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)

27. Canada Goose hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

28. This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered CANADA GOOSE Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The CANADA GOOSE Trademarks are highly distinctive marks. Consumers have come to expect the highest quality from Canada Goose Products offered, sold or marketed under the CANADA GOOSE Trademarks.

29. Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the CANADA GOOSE Trademarks without Canada Goose's permission.

30. Canada Goose is the exclusive owner of the CANADA GOOSE Trademarks. Canada Goose's United States Registrations for the CANADA GOOSE Trademarks (Exhibit 1) are in full force and effect. Upon information and belief, Defendants have knowledge of Canada Goose's rights in the CANADA GOOSE Trademarks, and are willfully infringing and intentionally using counterfeits of the CANADA GOOSE Trademarks. Defendants' willful, intentional and unauthorized use of the CANADA GOOSE Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Canada Goose Products among the general public.

31. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

32. Canada Goose has no adequate remedy at law, and if Defendants' actions are not enjoined, Canada Goose will continue to suffer irreparable harm to its reputation and the goodwill of its well-known CANADA GOOSE Trademarks.

33. The injuries and damages sustained by Canada Goose have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit Canada Goose Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

34. Canada Goose hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

35. Defendants' promotion, marketing, offering for sale, and sale of Counterfeit Canada Goose Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Canada Goose or the origin, sponsorship, or approval of Defendants' Counterfeit Canada Goose Products by Canada Goose.

36. By using the CANADA GOOSE Trademarks on the Counterfeit Canada Goose Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Canada Goose Products.

37. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit Canada Goose Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

38. Canada Goose has no adequate remedy at law and, if Defendants' actions are not enjoined, Canada Goose will continue to suffer irreparable harm to its reputation and the goodwill of its Canada Goose brand.

## PRAYER FOR RELIEF

WHEREFORE, Canada Goose prays for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

    a. using the CANADA GOOSE Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine Canada Goose Product or is not authorized by Canada Goose to be sold in connection with the CANADA GOOSE Trademarks;

    b. passing off, inducing, or enabling others to sell or pass off any product as a genuine Canada Goose Product or any other product produced by Canada Goose, that is not Canada Goose's or not produced under the authorization, control, or supervision of Canada Goose and approved by Canada Goose for sale under the CANADA GOOSE Trademarks;

    c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit Canada Goose Products are those sold under the authorization, control or supervision of Canada Goose, or are sponsored by, approved by, or otherwise connected with Canada Goose;

    d. further infringing the CANADA GOOSE Trademarks and damaging Canada Goose's goodwill; and

    e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Canada Goose, nor authorized by Canada Goose to be sold or offered for sale, and which bear any of Canada Goose's trademarks, including the CANADA GOOSE Trademarks, or any reproductions, counterfeit copies or colorable imitations thereof;

2) Entry of an Order that, at Canada Goose's choosing, the registrant of Defendants' Domain Names shall be changed from the current registrant to Canada Goose, and that the domain name registries for Defendants' Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, shall unlock and change the registrar of record for the Domain Names to a registrar of Canada Goose's selection, and that the domain name registrars, including, but not limited to, GoDaddy Operating Company, LLC ("GoDaddy"), Name.com, PDR LTD. d/b/a PublicDomainRegistry.com ("PDR"), and Namecheap, Inc. ("Namecheap"), shall take any steps necessary to transfer the Domain Names to a registrar account of Canada Goose's selection; or that the same domain name registries shall disable Defendants' Domain Names and make them inactive and untransferable;

3) Entry of an Order that, upon Canada Goose's request, those in privity with Defendants and those with notice of the injunction, including, without limitation, any online marketplace platforms such as iOffer, eBay, AliExpress, Alibaba, Amazon, Wish.com, and Dhgate, web hosts, sponsored search engine or ad-word providers, credit cards, banks, merchant account

providers, third party processors and other payment processing service providers, Internet search engines such as Google, Bing, and Yahoo, and domain name registrars, including, but not limited to, GoDaddy, Name.com, PDR, and Namecheap, (collectively, the "Third Party Providers") shall:

 a. disable and cease providing services being used by Defendants, currently or in the future, to engage in the sale of goods using the CANADA GOOSE Trademarks;

 b. disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the CANADA GOOSE Trademarks; and

 c. take all steps necessary to prevent links to the Seller Aliases identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Seller Aliases from any search index;

4) That Defendants account for and pay to Canada Goose all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the CANADA GOOSE Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

5) In the alternative, that Canada Goose be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the CANADA GOOSE Trademarks;

6) That Canada Goose be awarded its reasonable attorneys' fees and costs; and

7) Award any and all other relief that this Court deems just and proper.

Dated this 16th day of January 2020.	Respectfully submitted,

	/s/ Justin R. Gaudio
	Amy C. Ziegler
	Justin R. Gaudio
	Jake C. Christensen
	Greer, Burns & Crain, Ltd.
	300 South Wacker Drive, Suite 2500
	Chicago, Illinois 60606
	312.360.0080
	312.360.9315 (facsimile)
	aziegler@gbc.law
	jgaudio@gbc.law
	jchristensen@gbc.law

	*Attorneys for Plaintiff Canada Goose Inc.*